**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RALEIGH DUANE LEFTWICH, | : | HABEAS CORPUS |
|     Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | |
| DONALD BARROW, Warden, | : | CIVIL ACTION NO. |
| Telfair State Prison, | : | 1:11-CV-1015-WSD-RGV |
|     Respondent. | : | |

**<u>ORDER FOR SERVICE OF ORDER AND
FINAL REPORT AND RECOMMENDATION</u>**

Attached is the Order and Final Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72.1. Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties, or if a party is not represented, then directly upon said party.

Each party may file written objections, if any, to the report and recommendation within fourteen (14) days of receipt of this order. 28 U.S.C. § 636(b)(1). Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing

AO 72A
(Rev.8/82)

for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED** this 29th day of July, 2011.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| RALEIGH DUANE LEFTWICH, | : | HABEAS CORPUS |
| Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | |
| DONALD BARROW, Warden, | : | CIVIL ACTION NO. |
| Telfair State Prison, | : | 1:11-CV-1015-WSD-RGV |
| Respondent. | : | |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Petitioner Raleigh Duane Leftwich, an inmate at the Telfair State Prison in Helena, Georgia, has filed this counseled 28 U.S.C. § 2254 petition to challenge the constitutionality of his February 21, 2007, convictions in the Superior Court of Fulton County. The matter is now before the Court on the petition, [Doc. 1]; petitioner's motion for an evidentiary hearing, [Doc. 2]; respondent's answer-response, as amended, [Docs. 7-8], and motion to dismiss for lack of exhaustion, [Doc. 9]; and petitioner's response to the motion to dismiss, [Doc. 11]. For the following reasons, the undersigned **RECOMMENDS** that the petition be denied.

## I. PROCEDURAL HISTORY

Following a jury trial in the Superior Court of Fulton County, petitioner was convicted of rape, kidnapping, and aggravated assault and was sentenced to a total of twenty years of imprisonment. [Doc. 10-1 at 7-12]. On direct appeal, petitioner

argued, among other things, that the seizure of his DNA by prison officials violated his constitutional rights and that the statutes of limitation as to the kidnaping and aggravated assault charges were improperly tolled. Leftwich v. State, 682 S.E.2d 614, 617-19 (Ga. Ct. App. 2009). The Georgia Court of Appeals affirmed the trial court's judgment on July 7, 2009, and summarized the evidence presented at trial as follows:

> Viewing the facts in the light most favorable to the verdict, on the evening of December 31, 1994, 19–year–old E.C. was abducted at gunpoint from the Lenox Square Mall parking lot. E.C. was forced into a car, blinded with a pair of gold sunglasses with painted-over lenses, and driven to an unknown location, where she was raped. The attacker demanded that E.C. give him her address, and he threatened to kill her and her family if she reported the rape. The attacker returned E.C. to Lenox Mall, and the attacker's DNA was collected from her in a rape kit. The DNA was not matched to a suspect at that time, but a genetic profile of the attacker's DNA was added to the Combined DNA Index System database ("CODIS") in 1999.
>
> In the meantime, on May 23, 1995, [petitioner] was indicted by a Gwinnett County jury on various charges unrelated to the attack on E.C. [Petitioner] pleaded guilty to the charges and was sentenced to 35 years, with 15 years to serve in prison, followed by 20 years probation, and his judgment of conviction was entered on April 23, 1996.
>
> On June 30, 2004, a Gwinnett County Superior Court issued an order vacating two of [petitioner]'s charges, which resulted in an amended sentence of thirty years, with ten to serve. On February 11, 2005, the court sent an order to the Department of Corrections explaining that [petitioner] should be placed on probation immediately because his sentence of confinement should have ended on January 2, 2005 (based

2

> on the date [petitioner] originally was taken into custody for the Gwinnett County charges—January 2, 1995).
>
> On February 18, 2005, [petitioner] was released from prison on the Gwinnett crimes, and as part of his processing out of prison, a DNA sample was taken from him in accordance with OCGA § 24–4–60. A profile of [petitioner]'s 2005 DNA sample was developed and added to the CODIS database, and on September 26, 2005, it was matched to the DNA sample collected from E.C. after her 1994 attack.
>
> On October 14, 2005, [petitioner] was indicted for Count 1—rape, Count 2—aggravated assault with a deadly weapon (a handgun), Count 3—armed robbery, Count 4—kidnapping, and Count 5—possession of a firearm during the commission of a felony, in connection with the 1994 attack on E.C. A superseding indictment was filed in 2007, which charged [petitioner] with Count 1—rape, Count 2—kidnapping, Count 3—armed robbery, Count 4—aggravated assault with intent to rape, Count 5—aggravated assault with intent to rob, and Count 6—possession of a knife during the commission of a felony. The superseding indictment also added language to each of the counts, which read "[f]urther, as to count one (1) the identity of the accused was not known to the State until the year 2005 (OCGA § 17–3–2(2)), when . . . (DNA) evidence was used to establish the identity of [petitioner] (OCGA § 17–3–1(c.1))." Under each count of the remaining counts, instead of stating "as to count two (2)," "as to count three (3)," etc., the language simply repeated "as to count one (1)."

Id. at 616-17, 621 (footnote omitted). The Georgia Supreme Court denied certiorari on November 2, 2009, Leftwich v. State, No. S09C2013, 2009 Ga. LEXIS 710 (Ga. Nov. 2, 2009), and the United States Supreme Court denied certiorari on March 22, 2010, Leftwich v. Georgia, 130 S. Ct. 1913 (2010).

3

Petitioner filed this § 2254 petition on March 21, 2011. [Doc. 1]. In his petition and supporting memorandum, petitioner raises the following two grounds for relief: (1) the DNA evidence seized from him following his release from prison violates his constitutional rights; and (2) the statutes of limitation on Counts Two through Six of the superseding indictment were improperly tolled. [Id. at 8, 10; Doc. 1-1 at 11-21]. Respondent argues that the Georgia Court of Appeals' rejection of ground one is entitled to deference and that ground two does not state a federal claim for relief. [Doc. 7, br. at 8-15].[1]

## II. DISCUSSION

A.  **28 U.S.C. § 2254 Standards**

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that

---

[1] Petitioner also alleges in his petition that he was illegally detained for forty-eight days beyond the expiration of his prison sentence, in violation of his Fourth Amendment rights. [Doc. 1 at 8]. Respondent has moved to dismiss the petition because this ground, which pertains to petitioner's 1996 Gwinnett County convictions, is unexhausted. [Doc. 9]. However, petitioner responds that he is not challenging his Gwinnett County convictions and "is not seeking redress" for the forty-eight days he was detained beyond the end of his sentence for the convictions. [Doc. 11 at 4-5]. Rather, petitioner challenges, in ground one, "the validity of his current incarceration due to the evidence illegally seized during the time he was held beyond the term of his 1996 sentence." [Id. at 5]. In light of petitioner's clarification regarding his first ground for relief, **IT IS RECOMMENDED** that respondent's motion to dismiss for failure to exhaust, [Doc. 9], be **DENIED**.

4

person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a).  However, a federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Van Poyck v. Fla. Dep't of Corrs., 290 F.3d 1318, 1322 n.4 (11th Cir. 2002) ("[I]n the context of a habeas review of a state court's decision -- only Supreme Court precedent can clearly establish the law").

When applying § 2254(d), the federal court evaluating a habeas petition must first determine the applicable "'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)).  Next, the federal habeas court must ascertain whether the state court decision is "contrary to" that clearly established federal law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or whether the state court reached a result different from the Supreme Court on a set of materially indistinguishable facts.  Id. at 412-13.  In other words, a state court decision is

5

"contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. at 405; see also Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (a state court decision is not contrary to federal law simply because it does not cite Supreme Court authority; the relevant inquiry is whether the reasoning or the result of the state decision contradicts that authority).

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it must then determine whether the state court decision was an "unreasonable application" of clearly established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410). "Under § 2254(d)(1)'s 'unreasonable application clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly [but r]ather, that application must also be unreasonable." Williams, 529 U.S. at 411. Thus, "[a]s a

6

condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87; see also Yarborough v. Gentry, 540 U.S. 1, 5 (2003) ("Where [in federal habeas corpus petition] the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable.").

Pursuant to 28 U.S.C. § 2254(e)(1), the state court's determinations of factual issues are presumed correct. A petitioner can overcome this presumption only by presenting "clear and convincing evidence" that the state court's findings of fact were erroneous. Id.

The undersigned has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved. As petitioner has not made the showing required by 28 U.S.C. § 2254(e)(2) to entitle him to an evidentiary hearing, petitioner's motion for an evidentiary hearing, [Doc. 2], is denied, and the case is now ready for disposition.

7

### B.     Ground One:  DNA Evidence

In ground one, petitioner argues that the DNA evidence seized from him "during his discharge from the state prison system where he had been illegally detained for 48 days after his maximum term of imprisonment had expired" violated his Fourth Amendment rights because law enforcement had no warrant or probable cause to believe he had committed the rape.  [Doc. 1-1 at 12].  Petitioner also maintains that he was a probationer when the DNA was seized because his sentence had expired, and the seizure violated his Fifth and Fourteenth Amendment rights to privacy and due process.  [Id. at 11, 13-14].  Petitioner further asserts that "the DNA seizure is the fruit of an unconstitutional 'administrative search' scheme created by [the] Georgia CODIS statute [O.C.G.A. § 24-4-60], which violates the 4th Amendment."  [Id. at 14-15].

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."

8

Mincey v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000).  Additionally, the Eleventh Circuit has held that the extraction of saliva from incarcerated felons under O.C.G.A. § 24-4-60 does not violate either the Fourth Amendment's prohibition against unreasonable searches and seizures or a prisoner's right to privacy.  Padgett v. Donald, 401 F.3d 1273, 1277-81 (11th Cir. 2005).

In this case, the Georgia Court of Appeals, citing Padgett, ruled as follows:

O.C.G.A. § 24-4-60 generally does not violate the Fourth Amendment, the Georgia Constitution's search and seizure provisions, or an inmate's right to privacy under the federal or state constitutions.  [Petitioner], however, argues that in his case, because he should have been released from prison for the Gwinnett County charges on January 2, 2005, the State's act of taking a DNA sample from him on February 18, 2005, constituted an unreasonable search and seizure in his case, and the trial court therefore erred by not suppressing the DNA sample and the subsequent CODIS match to the 1994 DNA sample taken from E.C.

The exclusionary rule bars the admission of evidence obtained as the result of an illegal search because it is fruit of the poisonous tree. However, evidence is not fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the [State]. Rather, the inquiry in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.  Thus, even if evidence would not have been discovered but for the illegal [State] conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed.

[Petitioner]'s argument is without merit.  First, as this Court previously has determined, the Department of Corrections and a convict's presentence custodian are in charge of applying credit for time served.

9

> Thus, the correct calculation of [petitioner]'s remaining sentence after the entry of the order vacating some of his Gwinnett County convictions was a matter for the Department of Corrections, not the trial court, and the trial court's order directing his release is not necessarily evidence that [petitioner]'s detention after January 2, 2005, was illegal. Additionally, although [petitioner] contends that the Gwinnett County trial court's orders resulted in the immediate change in his status from incarcerated inmate to probationer, he cites no law that supports his contention, and again, because the Department of Corrections is responsible for calculation and application of terms of imprisonment, his argument that he was a probationer at the time of the search is meritless.
>
> Moreover, the DNA sample was taken from [petitioner] on February 18, 2005, rather than January 2, 2005 (the final date [petitioner] argues that he was legally held in prison), simply because he was physically discharged from custody on February 18. Thus, even assuming that [petitioner]'s detention at the time was illegal, the exclusionary rule does not apply to this case because the DNA extraction (and thereby, the CODIS match to E.C.'s attacker) was not a *result* of any illegal detention by the State. Furthermore, the threat of exclusion of evidence in this case is not likely to deter future instances of the presumed illegal conduct in this case—holding an inmate beyond the end of his sentence term—because the Department of Corrections employees responsible for calculating prison terms have no stake in the outcome of future criminal prosecutions.
>
> Accordingly, because the seizure of [petitioner]'s DNA would have occurred regardless of the illegal search or seizure, the trial court did not err in denying the motion to suppress the DNA match.

Leftwich, 682 S.E.2d at 617-18 (emphasis in original) (footnotes omitted).

Petitioner's Fourth Amendment claim is not reviewable by this Court because he has not shown the lack of a full and fair opportunity to litigate his claim. See

10

Stone, 428 U.S. at 494; Mincey, 206 F.3d at 1126.  In fact, the record reflects that petitioner was afforded an opportunity to develop his Fourth Amendment claim in the trial court, [see Doc. 10-2 at 16-27], as well as on appeal.  With regard to petitioner's claim that the DNA extraction violated his Fifth and Fourteenth Amendment right to privacy and his contention that the Georgia statute created an "unconstitutional 'administrative search' scheme," [Doc. 1-1 at 14], the state court's application of Padgett to these arguments was reasonable and entirely consistent with federal law and the Eleventh Circuit's ruling.  401 F.3d at 1277-81.

Petitioner's claim that his due process rights were violated because the state's procedures were not followed since he maintains that he was a probationer, and not an incarcerated felon, at the time of the extraction, [Doc. 1-1 at 14], also fails.  There is nothing clearly erroneous about the state court's finding that petitioner was not a probationer at the time of the DNA extraction and that the saliva sample was taken upon petitioner being physically discharged from lawful custody.  Leftwich, 682 S.E.2d at 618.  Moreover, to the extent petitioner contends that the DNA sample was taken from him contrary to state law, he has failed to state a due process violation. See Brown v. Williams, 124 F. App'x 907, 909 (5th Cir. 2005) (finding no cognizable due process claim where an inmate alleged that a state law authorizing the collection of DNA samples was incorrectly applied to him).  The undersigned

11

therefore finds that the state court's rejection of ground one is entitled to deference pursuant to 28 U.S.C. § 2254(d).  See Harrington, 131 S. Ct. at 785; Williams, 529 U.S. at 404-05, 412-13.

**C.    Ground Two:  Statutes of Limitation**

In ground two, petitioner argues that the statutes of limitation on Counts Two through Six of the superseding indictment were improperly tolled.  [Doc. 1-1 at 15-21].  Specifically, petitioner maintains that the superseding indictment failed to include the mandatory tolling language in each count, and the original indictment was not filed within the limitations period and did not contain the tolling language required by Georgia law.  [Id. at 18-20].  The Georgia Court of Appeals rejected this claim, finding no violation of Georgia law.  Leftwich, 682 S.E.2d at 618-19.

Petitioner has presented no argument that this alleged error of state law also violated federal law.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore, ground two does not justify granting petitioner a federal writ of habeas corpus.  See Beverly v. Jones, 854 F.2d 412, 416 (11th Cir. 1988) (holding that petitioner's challenge to his state conviction on the ground that it was barred by

12

AO 72A
(Rev.8/82)

the applicable statute of limitations did not present a "basis for federal habeas relief since no question of a constitutional nature [was] involved" and the state court's rejection of the claim was conclusive).

### III.  CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). Based on the foregoing discussion of petitioner's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that petitioner be denied a COA.

## IV.  CONCLUSION

For the foregoing reasons, petitioner's motion for an evidentiary hearing, [Doc. 2], is **DENIED**, and **IT IS RECOMMENDED** that this 28 U.S.C. § 2254 petition, [Doc. 1], respondent's motion to dismiss for lack of exhaustion, [Doc. 9], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 29th day of July, 2011.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE