**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RALEIGH DUANE LEFTWICH, | : | HABEAS CORPUS |
| Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | |
| DONALD BARROW, Warden, | : | CIVIL ACTION NO. |
| Telfair State Prison, | : | 1:11-CV-1015-WSD |
| Respondent. | : | |

**OPINION AND ORDER**

This matter is before the Court on Petitioner Raleigh Duane Leftwich's ("Petitioner") Objections [15] to the Final Report and Recommendation ("R&R") of United States Magistrate Judge Russell G. Vineyard [12], recommending that the Petition for Writ of Habeas Corpus ("Petition") [1], Respondent Donald Barrow's ("Respondent") Motion to Dismiss [9], and a Certificate of Appealability ("COA") be denied. As to ground one, the Magistrate Judge found that: Petitioner's Fourth Amendment claim is not reviewable by this Court because he has not shown the lack of a full and fair opportunity to litigate his claim; the state court reasonably applied Padgett v. Donald, 401 F.3d 1273, 1277-81 (11th Cir. 2005), in rejecting Petitioner's arguments that the DNA extraction violated his Fifth and Fourteenth Amendment right to privacy and that the Georgia statute created an

"unconstitutional 'administrative search' scheme; there is nothing clearly erroneous about the state court's finding that Petitioner was not a probationer at the time of the DNA extraction and that the saliva sample was taken upon Petitioner being physically discharged from lawful custody; and Petitioner's contention that the DNA sample was taken from him contrary to state law does not state a due process violation. The Magistrate Judge further found, as to ground two, that Petitioner presented no argument that the alleged error of state law also violated federal law. Petitioner objects [15] to the Magistrate Judge's findings concerning ground one.

## I.   BACKGROUND[1]

Following a jury trial in the Superior Court of Fulton County, Petitioner was convicted of rape, kidnapping, and aggravated assault and was sentenced to a total of twenty years of imprisonment. (10-1 at 7-12). On July 7, 2009, the Georgia Court of Appeals affirmed Petitioner's convictions.[2] The Georgia Supreme Court denied certiorari on November 2, 2009,[3] and the United States Supreme Court

---

[1] The Court briefly summarizes the procedural history here. The background of the case is more fully set forth in the R&R.

[2] Leftwich v. State, 682 S.E.2d 614 (Ga. Ct. App. 2009).

[3] Leftwich v. State, No. S09C2013, 2009 Ga. LEXIS 710 (Ga. Nov. 2, 2009).

denied certiorari on March 22, 2010.[4]

On March 21, 2011, Petitioner, represented by counsel, petitioned this Court for a writ of habeas corpus, on the grounds that: (1) the DNA evidence seized from him following his release from prison violated his constitutional rights; and (2) the statutes of limitation on Counts Two through Six of the superseding indictment were improperly tolled.[5] (Pet., Doc. 1 at 8, 10; Mem., Doc. 1-1 at 11-21). Respondent argues that the Georgia Court of Appeals' rejection of ground one is entitled to deference and that ground two does not state a federal claim for relief. (Resp't Br., Doc. 7-1 at 8-15).[6]

---

[4] Leftwich v. Georgia, 130 S. Ct. 1913 (2010).

[5] In his objections, Petitioner states that he also raised a claim challenging the trial court's jury instructions as to the tolling language for the statute of limitations. (Doc. 15 at 5-6). No such ground for relief is presented in the Petition or supporting memorandum. (See generally Doc. 1).

[6] Petitioner also alleges that he was illegally detained for forty-eight days beyond the expiration of his prison sentence, in violation of his Fourth Amendment rights. (Pet., Doc. 1 at 8). Respondent has moved to dismiss the petition because this ground, which pertains to Petitioner's 1996 Gwinnett County convictions, is unexhausted. (Doc. 9). Petitioner responds that he is not challenging his Gwinnett County convictions and "is not seeking redress" for the forty-eight days he was detained beyond the end of his sentence for the convictions. (Doc. 11 at 4-5). Rather, Petitioner challenges, in ground one, "the validity of his current incarceration due to the evidence illegally seized during the time he was held beyond the term of his 1996 sentence." (Id. at 5). In light of

3

On July 29, 2011, the Magistrate Judge issued his R&R, recommending that the Petition and a COA be denied.  The Magistrate Judge found that ground one does not provide grounds for federal habeas relief because Petitioner was afforded an opportunity to develop his Fourth Amendment claim in both the trial court and on appeal, and Petitioner failed to show that the state court's rejection of his other arguments presented in ground one was contrary to, or involved and unreasonable application of, clearly established federal law.   The Magistrate Judge found further that ground two does not state a federal claim for relief.  On August 26, 2011, Petitioner objected to the Magistrate Judge's findings as to ground one.

**II.   DISCUSSION**

   A.   Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  See 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge

---

Petitioner's clarification regarding his first ground for relief, the Magistrate Judge recommended that Respondent's motion to dismiss for failure to exhaust, (Doc. 9), be denied.  The Court finds no plain error in this conclusion and adopts the recommendation that Respondent's motion to dismiss be denied.

4

"shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (per curiam) (quoting H.R. Rep. No. 94-1609, 94th Cong., 2d Sess. (1976)). With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

B.   28 U.S.C. § 2254 Standards

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. 28 U.S.C. § 2254(a). In general, a state prisoner who seeks federal habeas corpus relief must first exhaust his available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established

5

Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Van Poyck v. Fla. Dep't of Corrs., 290 F.3d 1318, 1322 n.4 (11th Cir. 2002) (per curiam) ("[I]n the context of a habeas review of a state court's decision–only Supreme Court precedent can clearly establish the law.").

When applying § 2254(d), the federal court evaluating a habeas petition must first determine the applicable "'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)).  Next, the federal habeas court must ascertain whether the state court decision is "contrary to" that clearly established federal law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or whether the state court reached a result different from the Supreme Court on a set of materially indistinguishable facts.  Id. at 412-13.  In other words, a state court decision is "contrary to" clearly established federal law only when it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. at 405; see also Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (a state court decision is not

6

contrary to federal law simply because it does not cite Supreme Court authority; the relevant inquiry is whether the reasoning or the result of the state decision contradicts that authority).

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it must then determine whether the state court decision was an "unreasonable application" of clearly established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410) (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly [but r]ather, that application must also be unreasonable." Williams, 529 U.S. at 411. Thus,

[a]s a condition for obtaining habeas corpus from a federal court, a

7

> state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington, 131 S. Ct. at 786-87; see also Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) ("Where [in a federal habeas corpus petition] the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable."). Additionally, the state court's determinations of factual issues are presumed correct. 28 U.S.C. § 2254(e)(1). A petitioner can overcome this presumption only by presenting "clear and convincing evidence" that the state court's findings of fact were erroneous. Id.

  C. Ground One: DNA Evidence

Petitioner argues that the DNA evidence seized from him "during his discharge from the state prison system where he had been illegally detained for 48 days after his maximum term of imprisonment had expired" violated his Fourth Amendment rights because law enforcement had no warrant or probable cause to believe he had committed the rape. (Mem., Doc. 1-1 at 12). Petitioner also maintains that he was a probationer when the DNA was seized because his sentence had expired, and the seizure violated his Fifth and Fourteenth Amendment rights to

8

privacy and due process.  (Id. at 11, 13-14).  Petitioner further asserts that "the DNA seizure is the fruit of an unconstitutional 'administrative search' scheme created by [the] Georgia CODIS statute [O.C.G.A. § 24-4-60], which violates the 4th Amendment."  (Id. at 14-15).

The Magistrate Judge first found that Petitioner's Fourth Amendment claim is not reviewable by this Court because he has not shown the lack of a full and fair opportunity to litigate his claim.  (R&R at 10-11).  Next, the Magistrate Judge found that:  the state court reasonably applied Padgett v. Donald, 401 F.3d 1273, 1277-81 (11th Cir. 2005), in rejecting Petitioner's arguments that the DNA extraction violated his Fifth and Fourteenth Amendment right to privacy and that the Georgia statute created an "unconstitutional 'administrative search' scheme; there is nothing clearly erroneous about the state court's finding that Petitioner was not a probationer at the time of the DNA extraction and that the saliva sample was taken upon Petitioner being physically discharged from lawful custody; and Petitioner's contention that the DNA sample was taken from him contrary to state law does not state a due process violation.  (Id. at 11-12).

Petitioner objects, contending that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because the Georgia Court of

9

Appeals "failed to make explicit findings on the issues raised and the factual issues decided by them were erroneous under the clear and convincing evidence standard." (Obj. at 8). Specifically, Petitioner maintains that the state court erred in rejecting his arguments that his detention beyond the expiration of his sentence was illegal, and thus, he was a probationer at the time of the DNA extraction. (Id. at 8-26).

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." Mincey v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000). Additionally, the Eleventh Circuit has held that the extraction of saliva from incarcerated felons under O.C.G.A. § 24-4-60 does not violate either the Fourth Amendment's prohibition against unreasonable searches and seizures or a prisoner's right to privacy. Padgett v. Donald, 401 F.3d 1273, 1277-81 (11th Cir. 2005).

10

In this case, the Georgia Court of Appeals, citing <u>Padgett</u>, ruled as follows:

O.C.G.A. § 24-4-60 generally does not violate the Fourth Amendment, the Georgia Constitution's search and seizure provisions, or an inmate's right to privacy under the federal or state constitutions. [Petitioner], however, argues that in his case, because he should have been released from prison for the Gwinnett County charges on January 2, 2005, the State's act of taking a DNA sample from him on February 18, 2005, constituted an unreasonable search and seizure in his case, and the trial court therefore erred by not suppressing the DNA sample and the subsequent CODIS match to the 1994 DNA sample taken from E.C.

The exclusionary rule bars the admission of evidence obtained as the result of an illegal search because it is fruit of the poisonous tree. However, evidence is not fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the [State]. Rather, the inquiry in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Thus, even if evidence would not have been discovered but for the illegal [State] conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed.

[Petitioner]'s argument is without merit. First, as this Court previously has determined, the Department of Corrections and a convict's presentence custodian are in charge of applying credit for time served. Thus, the correct calculation of [petitioner]'s remaining sentence after the entry of the order vacating some of his Gwinnett County convictions was a matter for the Department of Corrections, not the trial court, and the trial court's order directing his release is not necessarily evidence that [petitioner]'s detention after January 2, 2005, was illegal. Additionally, although [petitioner] contends that the Gwinnett County trial court's orders resulted in the immediate change

11

> in his status from incarcerated inmate to probationer, he cites no law that supports his contention, and again, because the Department of Corrections is responsible for calculation and application of terms of imprisonment, his argument that he was a probationer at the time of the search is meritless.
>
> Moreover, the DNA sample was taken from [petitioner] on February 18, 2005, rather than January 2, 2005 (the final date [petitioner] argues that he was legally held in prison), simply because he was physically discharged from custody on February 18.  Thus, even assuming that [petitioner]'s detention at the time was illegal, the exclusionary rule does not apply to this case because the DNA extraction (and thereby, the CODIS match to E.C.'s attacker) was not a *result* of any illegal detention by the State.  Furthermore, the threat of exclusion of evidence in this case is not likely to deter future instances of the presumed illegal conduct in this case—holding an inmate beyond the end of his sentence term—because the Department of Corrections employees responsible for calculating prison terms have no stake in the outcome of future criminal prosecutions.
>
> Accordingly, because the seizure of [petitioner]'s DNA would have occurred regardless of the illegal search or seizure, the trial court did not err in denying the motion to suppress the DNA match.

Leftwich, 682 S.E.2d at 617-18 (emphasis in original) (footnotes omitted).

It is clear from the record that Petitioner was afforded an opportunity to develop his Fourth Amendment claim in the trial court, (see Doc. 10-2 at 16-27), as well as on appeal.  That Petitioner disagrees with the state court's conclusions of state law with respect to his status at the time of the DNA distraction does not demonstrate that he did not receive a full and fair opportunity to litigate his Fourth

12

Amendment claim.  There is nothing clearly erroneous about the state court's factual findings that Petitioner was not a probationer at the time of the DNA extraction and that the saliva sample was taken upon Petitioner being physically discharged from lawful custody.  Leftwich, 682 S.E.2d at 618.  Petitioner's argument, as reiterated at length in his objections, that the DNA sample was taken from him contrary to state law fails to state a due process violation.  See Brown v. Williams, 124 F. App'x 907, 909 (5th Cir. 2005) (finding no cognizable due process claim where an inmate alleged that a state law authorizing the collection of DNA samples was incorrectly applied to him).  Additionally, the state court's application of Padgett was reasonable and entirely consistent with federal law and the Eleventh Circuit's ruling.  401 F.3d at 1277-81.  Accordingly, the state court's rejection of ground one is entitled to deference pursuant to 28 U.S.C. § 2254(d).  See Harrington, 131 S. Ct. at 785; Williams, 529 U.S. at 404-05, 412-13.  Petitioner's objections to the R&R findings regarding ground one are overruled.

      D.     Ground Two: Statute of Limations

Petitioner has not objected to the Magistrate Judge's finding that ground two does not state a federal claim for relief.  The Court reviews the Magistrate Judge's findings for plain error.

13

Petitioner argues in ground two that the statutes of limitation on Counts Two through Six of the superseding indictment were improperly tolled. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, the Magistrate Judge found that ground two does not justify granting Petitioner a federal writ of habeas corpus. See Beverly v. Jones, 854 F.2d 412, 416 (11th Cir. 1988) (holding that petitioner's challenge to his state conviction on the ground that it was barred by the applicable statute of limitations did not present a "basis for federal habeas relief since no question of a constitutional nature [was] involved" and the state court's rejection of the claim was conclusive). The Court finds no plain error in the Magistrate Judge's conclusion that ground two does not warrant federal habeas relief.

E. Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that

14

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). Petitioner has not objected to the Magistrate Judge's recommendation that a COA be denied. (R&R at 13). Finding no plain error in the Magistrate Judge's findings of fact and conclusions of law that, based on the foregoing analysis of Petitioner's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, the Court adopts the Magistrate Judge's recommendation that a COA be denied.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** Magistrate Judge Russell G. Vineyard's Final Report and Recommendation [12] and Petitioner Raleigh Duane Leftwich's Objections [15] are **OVERRULED**.

**IT IS FURTHER ORDERED** that this the Petition for Writ of Habeas Corpus [1], Respondent's motion to dismiss for lack of exhaustion [9], and a COA are **DENIED**.

The Clerk is **DIRECTED** to close this action.

15

AO 72A
(Rev.8/82)

**IT IS SO ORDERED**, this 26th day of September, 2011.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE